STATE COMPENSATION INSURANCE AUTHORITY and William D. Hillen, d/b/a Hillen Brick Corporation, Petitioners,

v.

The INDUSTRIAL CLAIM APPEALS OFFICE OF THE STATE OF COLORADO; Director, Division of Labor; and Clarence D. Beagley, Claimant, Respondents.

No. 88CA0513.

Colorado Court of Appeals,
Div. IV.

May 11, 1989.

Rehearing Denied June 22, 1989.

Certiorari Denied Jan. 2, 1990.

---

Paul Tochtrop and Eliot J. Wiener, Denver, for petitioners.

Traylor, Arnold, Tompkins & Black, Peter R. Black, Grand Junction, for respondent Clarence D. Beagley.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., and Aurora Ruiz–Hernandez, Asst. Atty. Gen., Denver, for respondent The Indus. Claim Appeals Office of the State of Colo., and Director, Div. of Labor.

Opinion by Judge JONES.

State Compensation Insurance Authority and William D. Hillen, d/b/a Hillen Brick Corporation (petitioners), contest a thirty-five percent permanent partial disability award to Clarence D. Beagley (claimant). We affirm.

Claimant was a laborer for Hillen. In 1982, while working, claimant was struck in the head by a pipe attached to a cement mixer. He was knocked approximately 20 feet by the impact, but remained conscious and completed his shift.

Although he reported the accident to his supervisor, claimant did not miss any work as a result of the accident because he felt that he had not been seriously injured. He continued to work until 1984, at which time he elected to retire at age 65.

In April 1986, claimant fell down a flight of stairs, suffering a number of injuries, however, he was found not to require immediate medical attention. The next day, he suffered a seizure and, while in the hospital, he suffered a second seizure. Diagnosis of the cause of the seizures result-ed in his undergoing emergency surgery to remove an intercranial cyst. While still in the hospital, he suffered four additional seizures. Prior to April 1986, claimant had never suffered a seizure.

The surgeon who performed the craniectomy on claimant stated that the cyst had resulted from trauma to the head, and had to have been of long standing duration. He added that it was "probably a result of a head injury sustained by [claimant] in August or September of 1982." The surgeon further opined that it was not possible that such a cyst could have resulted from claimant's fall down the stairs the day prior to his admission to the hospital.

Claimant initiated a claim for workmen's compensation benefits. At his compensation hearing, he indicated that during his retirement, the only paid work he had performed was a two-week stint at a hunting camp where he earned $500. A vocational counselor testified that the injury and resulting seizures reduced the number of jobs available to claimant by eleven percent and impaired his earning capacity by thirty-five percent. Claimant testified that he could not return to any of the jobs he had held previously.

The Administrative Law Judge (ALJ) determined that the 1982 accident was the cause of claimant's disability, and that he had sustained thirty-five percent permanent partial disability as a working unit. The Industrial Claim Appeals Office (Panel) affirmed.

I.

Petitioners contend on review that the award was unjustified. They argue that, as a matter of law, claimant's earning capacity could not have been impaired by the injury because his intent upon retirement was to discontinue paid employment. We disagree.

This precise issue has not been previously addressed by Colorado courts in a workmen's compensation situation, and there is a split of authority among other jurisdictions. *Compare Mullaney v. Gilbane Building Co.*, 520 A.2d 141 (R.I.1987)

(workers who voluntarily retired before their injuries became disabling were not entitled to compensation as retirement constitutes surrender of capacity to earn), *with Schroeder v. Highway Services,* 403 N.W.2d 237 (Minn.1987) (voluntary retiree awarded permanent partial disability benefits because award is not dependent on lost earnings, but on lost capacity to earn at extent of previous wages), *and Franco v. Industrial Commission,* 130 Ariz. 37, 633 P.2d 446 (App.1981) (voluntary retirement does not warrant reduction of permanent benefits).

■ We agree with the Panel that an actual loss of earnings because of an injury is not dispositive of entitlement to permanent partial disability benefits. Rather, this factor is only one of many to be considered in determining the existence of impaired earning capacity. *See Vail Associates, Inc. v. West,* 692 P.2d 1111 (Colo. 1984); *Ski Depot Rentals, Inc. v. Lynch,* 714 P.2d 516 (Colo.App.1985).

■ The term impaired "earning *capacity*", as contemplated by § 8–51–108(1)(b), C.R.S. (1988 Cum.Supp.), means the loss of the *ability* to earn, not simply lost wages. *Cf.* § 8–51–102, C.R.S. (1988 Cum.Supp.); *Eastman Kodak Co. v. Industrial Commission,* 725 P.2d 107 (Colo.App.1986) (*temporary* disability benefits dependent on degree of actual wage loss). Therefore, we agree with the Panel's conclusion that claimant's voluntary retirement does not, *ipso facto,* preclude a permanent disability award.

We iterate that the claimant, as one who retired before discovery of his disabling injury, has a burden to establish that his employability for either full-time employment, or employment to supplement retirement income, has been reduced by virtue of the injury. That showing under § 8–51–108 entitled him to permanent partial disability benefits. The fact of his voluntary retirement does not change the circumstance that the injury has resulted in the impairment of his capacity to return to the job market at a level comparable to that he could have attained but for the injury. *See Wheeling–Pittsburgh Steel Corp. v. Workmen's Compensation Appeals Board,* 70 Pa.Cmwlth. 100, 452 A.2d 611 (1982); *VanVoorhis v. Workmen's Compensation Appeals Board,* 37 Cal. App.3d 81, 112 Cal.Rptr. 208 (1974). *Compare Moyer v. Merrick,* 155 Colo. 73, 392 P.2d 653 (1964) (in negligence action arising out of automobile injury, plaintiff entitled to be compensated for impairment to his earning capacity even after retirement).

## II.

■ Petitioners contend, however, that even should claimant be entitled to an award, the Panel erred in concluding that the thirty-five percent award is supported by the evidence. We disagree.

The vocational counselor's testimony is sufficient evidence to support the award. The basis of the award is apparent from the order and the record as a whole. *See George v. Industrial Commission,* 720 P.2d 624 (Colo.App.1986).

Although the counselor's testimony was somewhat equivocal and could also be construed to support a lesser award, the ALJ's resolution of conflicting inferences will not be disturbed on review. *See Gelco Courier v. Industrial Commission,* 702 P.2d 295 (Colo.App.1985).

We are also unpersuaded by petitioners' assertion that the award is unjustified since claimant can still earn the $8000 of maximum income permitted by Social Security regulations. The counselor testified that claimant could now command only $6.02 per hour as compared with $9.63 hourly before he became disabled. Therefore, claimant would be required to work thirty-seven percent more hours in order to earn the $8000 maximum.

■ When a worker is required to work increased hours in order to match his pre-injury earning capacity, a permanent disability award is proper. *See Don Ward & Co. v. Industrial Commission,* 722 P.2d 1026 (Colo.App.1986).

The order is affirmed.

TURSI and REED, JJ., concur.